**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ILENE BRAXTON,            ) | |
| ) | 3:12-cv-00028-RCJ-VPC |
| Plaintiff,     ) | |
| ) | |
| v.              ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE,       ) | |
| ) | |
| Defendant.     ) | February 20, 2013 |
| ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion to remand (#13).[1] Defendant filed an opposition and a cross-motion for summary judgment (#17/#18).[2] Plaintiff replied (#21). For the reasons set forth below, the court recommends that plaintiff's motion to remand (#13) be denied, and defendant's cross-motion for summary judgment (#18) be granted.

## I. ADMINISTRATIVE PROCEEDINGS

On October 29, 2008, plaintiff Ilene E. Braxton ("plaintiff") filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (Administrative Record ("AR") 14, 139-141, 144-45). Plaintiff alleged disability beginning February 28, 2007, due to degenerative disc disease, muscle spasms, nervous tics in her extremities, an inability to bend, twist, hold or lift heavy items, supraventricular tachycardia ("SVT"), heart murmur, neck problems,

---
[1] Refers to the court's docket numbers.
[2] Docket numbers 17 and 18 are identical.

shoulder problems, numbness, stiff hips, an occasional inability to walk and problems sleeping due to pain. *Id.* at 84, 87. The Commissioner denied plaintiff's claims initially and on reconsideration. *Id.* at 53-89. On September 17, 2010, plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Jean R. Kerins. *Id.* at 29-52. On November 3, 2010, the ALJ issued a written opinion, upholding the denial of plaintiff's claims. *Id.* at 14-21. On November 18, 2010, the Appeals Council denied review, rendering the ALJ's decision final. *Id.* at 1-5. On January 17, 2012, having exhausted all administrative remedies, plaintiff filed a complaint for judicial review (#1).

## II.  BACKGROUND

Plaintiff was forty-eight years old at the time of her hearing before ALJ Kerins (AR 32). Plaintiff has a high school equivalency certification ("GED") and has taken some vocational courses in business and floral design. *Id.* The ALJ found that plaintiff is capable of performing past relevant work as an administrative assistant, attendance secretary, or receptionist. *Id.* at 20. Accordingly, the ALJ determined that plaintiff "has not been under a disability." *Id.* Specifically, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since February 28, 2007, the application date (20 C.F.R. §§ 404.1571, *et. seq.* and 416.971, *et. seq.*).

3. The claimant has the following severe impairments: history of tachycardia and degenerative disc disease (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§§§§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. The claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).

6. The claimant is capable of performing past relevant work as an administrative assistant, DOT

    169.167-010, attendance secretary, DOT 219.362-014, and receptionist, DOT 237.367-038. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2007, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

*Id.* at 16-20.

### III.  STANDARD OF REVIEW & RELEVANT LAW

The court must uphold the ALJ's decision if the ALJ applied the correct legal standards and his or her findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citing *Smolen*, 80 F.3d at 1279). "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The Social Security Administration defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to the Social Security Act, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ considers: (1) whether the claimant is engaging in substantial gainful activity; (2) the severity of the alleged impairment(s); (3) whether the impairment(s) meet or equal a listed impairment and meet the duration requirement; (4) whether the claimant is capable of doing work he or she has done in the past; and (5) whether the impairment(s) prevent the claimant from doing any other work. *Id.* If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

## IV.  ANALYSIS

Plaintiff contends that the ALJ made multiple legal errors and came to conclusions which are not supported by substantial evidence in the record (#13, p. 4). Plaintiff claims the ALJ: (1) improperly disregarded plaintiff's obesity at Steps 2 and 3 of the sequential evaluation process (#13, pp. 8-9); (2) should have obtained an MRI report before finding plaintiff's brain atrophy to be a non-severe impairment (#13, p. 11); (3) should have ordered a consultative evaluation to assess plaintiff's brain atrophy (#13, pp. 11-12); and (4) should have followed the "Special Technique" set forth in 20 C.F.R. § 404.1520a to assess plaintiff's brain atrophy. *Id.* at 12.

Defendant opposes plaintiff's motion on the grounds that: (1) whether the ALJ found plaintiff's obesity or brain atrophy to be a severe impairment is immaterial, as the ALJ found that plaintiff had other severe impairments; and thus, plaintiff's case proceeded to the next step in the sequential disability analysis (#17, pp. 3-4); (2) even if the ALJ erred by failing to acknowledge plaintiff's obesity, any error is harmless because plaintiff has produced no medical records

suggesting that her weight adversely affects her functioning (#17, pp. 4-5); (3) plaintiff fails to identify which listing her obesity meets or equals (#17, p. 5); (4) substantial evidence supports the ALJ's finding that plaintiff's brain atrophy is a non-severe impairment (#17, p. 7); and (5) the ALJ had no duty to develop the record as to plaintiff's brain atrophy. *Id.*

Plaintiff replies that: (1) the ALJ must assess the severity of all medically determinable impairments at Step 2 so that an accurate analysis may be made at Step 3 (#21, pp. 2, 4); and (2) the ALJ must conduct the analysis set forth in 20 C.F.R. § 404.1520a before finding plaintiff's brain atrophy to be a non-severe impairment. *Id.* at 3.

### A.  Plaintiff's Obesity

Plaintiff's medical records primarily record her history of SVT and degenerative disc disease (AR 18).  However, the medical records also note plaintiff's obesity.  On October 8, 2007, plaintiff was 5'8" tall and she weighed 244 pounds.  *Id.* at 257.  On November 11, 2008, plaintiff weighed 236 pounds.  *Id.* at 255.  This height and weight combination equates to a body mass index ("BMI") of 36, which is considered obese by the Commissioner (#17, p. 4).  On February 5, 2009, Dr. Richard R. Gasparre described plaintiff as an "[o]bese female" (AR 266).[3]  However, Dr. Gasparre found that plaintiff could occasionally lift up to 50 pounds and frequently lift up to 25 pounds.  *Id.* at 268.  Dr. Gasparre also found that plaintiff could sit and stand for about six hours in an eight-hour day with alternate sitting and standing.  *Id.*  Dr. Gasparre noted that plaintiff could walk normally and had no trouble squatting or kneeling.  *Id.* at 267.  The ALJ discussed Dr. Gasparre's findings in her November 3, 2010, written opinion,[4] but did not wholly accept them.  *Id.* at 19.  Although the ALJ agreed with Dr. Gasparre's opinion that plaintiff could perform work, the ALJ found that

---

[3] On November 25, 2009, Dr. Jose B. Ruiz-Lagos described plaintiff as a "well-kempt obese lady who appears to be in no acute distress." *Id.* at 309. Other medical records from the relevant time period do not mention plaintiff's weight. *Id.* at 294.

[4] Dr. Gasparre's opinion was considered by Dr. William Carlson—the State agency physician—who found that plaintiff was able to perform medium work (AR 19, 278).

plaintiff was more limited than the doctor opined. Thus, the ALJ determined that plaintiff could perform only sedentary-level work, which involves lifting and carrying up to 10 pounds and standing or walking only two hours in an eight-hour day. *Id.* at 19-20, 268.

At the hearing, plaintiff testified that she cannot work because of her back and heart problems (AR 36). Plaintiff stated that she has a stiff neck and constant pain in her lower back and legs. *Id.* at 40-41, 43. Plaintiff also stated that her back goes out about four times a year, and when this occurs she experiences stiffness and pain in her hips and legs and is unable to walk. *Id.* at 35. Plaintiff claimed that her back episodes are "what I've been going through for years." *Id.* at 36. Plaintiff also testified that for the past twenty-eight years she has suffered from SVT and heart palpitations, and that these conditions are getting worse. *Id.* Plaintiff stated that she lives in constant fear that her heart will go into SVT mode, i.e., that her heart will speed up. *Id.* at 37.

Plaintiff alleges that the ALJ committed reversible error by failing to consider her obesity in Step 2 of the sequential evaluation process. The court notes that when plaintiff applied for DIB and SSI, she did not list obesity as an impairment (AR 174, 201). At the September 17, 2010, hearing, plaintiff also did not mention any physical problems due to her weight. *Id.* at 29-52. However, the Commissioner concedes that ALJ Kerins should have considered the effect of plaintiff's obesity on her ability to perform work-related functions, and acknowledges that ALJ Kerins did not assess plaintiff's obesity in her written opinion (#17, p. 4). The Commissioner contends that such error is harmless, as plaintiff has produced no medical records showing that her obesity adversely impacted her functioning. *Id.* at 5.

In social security cases, a claimant may only be found to be disabled if the claimant has a severe impairment, or a combination of impairments, significantly limiting the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step 2, the

claimant must prove that a physical or mental impairment is severe by providing medical evidence consisting of signs, symptoms, and laboratory findings. *See* 20 C.F.R. §§ 404.1508, 416.908. The claimant is required to present "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citation omitted). The claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908. An impairment, or combination of impairments, is "not severe" when medical and other evidence establish only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921.

Pursuant to SSR 02-01p, ¶ 6, the Social Security Administration will find obesity to be a severe impairment when, alone or in combination with another medically determinable physical or mental impairment, "it significantly limits an individual's physical or mental ability to do basic work activities." Thus, while SSR 02-01p states that the ALJ will evaluate the effects of obesity, it remains plaintiff's burden to show that obesity has some effect on her functional capacity.

Under the circumstances of this case, the court finds that the ALJ did not commit reversible error in failing to consider plaintiff's obesity at Step 2 of the sequential evaluation process. There was no evidence in the record that plaintiff's obesity limited her functioning. There are no medical notes discussing any sort of treatment plan for plaintiff's obesity, and no medical notes indicating how plaintiff's obesity affected her SVT or degenerative disc disease. Thus, the medical record is silent as to the severity of plaintiff's obesity, whether plaintiff's obesity affected her functioning, and if so, how plaintiff's obesity might have exacerbated her other conditions. Moreover, plaintiff did not allege disability due to her obesity and did not present any testimony or other evidence at the September 17, 2010, hearing which would indicate that her obesity impacted her ability to work. The ALJ cannot make assumptions about the severity of obesity combined with other impairments.

*See* SSR 02-01p, ¶ 7 ("Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment."). The court finds that there is no evidence that plaintiff's obesity constituted a severe impairment. Accordingly, the ALJ did not commit reversible error in failing to consider plaintiff's obesity at Step 2 of the sequential evaluation process.

Plaintiff also alleges that the ALJ committed reversible error by failing to consider her obesity in combination with her other impairments in Step 3 of the sequential evaluation process. In Step 3, the ALJ compares the claimant's impairments with those found in "The Listing of Impairments" ("the Listings"). *See* 20 C.F.R. § 404, Subpart P, Appendix 1. The Listings describe specific impairments of each of the major body systems which are considered "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). If the claimant's impairments meet or equal a listed impairment, and are of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Medical equivalence is established "if the medical findings are at least equal in severity and duration to the listed findings." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). It is the claimant's burden to show she has an impairment that meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Obesity is not a separately listed impairment. Thus, a claimant with obesity will be deemed to meet or equal the criteria of a listed impairment if he or she has "an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-01p, ¶ 7. "[An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case *based on the*

*information in the case record.*" *Burch*, 400 F.3d at 682 (emphasis in original). Further, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Id.* at 683.

Plaintiff relies on *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), to support her claim that the ALJ should have considered the effect of plaintiff's obesity upon her other impairments in Step 3 of the sequential evaluation process. Plaintiff asserts that the ALJ's complete disregard of plaintiff's obesity falls short of what is required by *Celaya*. In *Celaya*, the plaintiff had a BMI of at least 44, which placed her in the "extremely obese" category—the highest category used by the Commissioner. 332 F.3d at 1179. The court found that even though the plaintiff did not explicitly raise obesity as a disabling factor, the ALJ should have included it in the sequential evaluation process, as: (1) obesity was implicitly raised in the plaintiff's report of symptoms; (2) it was clear from the record that the plaintiff's obesity was at least close to a listing criterion, and was a condition that could exacerbate her reported illness; and (3) in light of the plaintiff's pro se status, her appearance at the hearing, and her medical records, the ALJ should have been alerted to the need to develop the record with respect to the plaintiff's obesity. *Id.* The court concluded, "The ALJ's exclusion of obesity from his analysis is error in that he was addressing an illiterate, unrepresented claimant who very likely never knew that she *could* assert obesity as a partial basis for her disability." *Id.* at 1183 (emphasis in original). The *Celaya* court remanded the case for the ALJ to determine the effect of the plaintiff's obesity upon her other impairments, and upon her ability to work. *Id.* at 1182.

The Commissioner relies upon *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), in which the plaintiff also alleged that the ALJ failed to adequately consider her obesity throughout the sequential

disability analysis—especially the effect of her obesity upon her other impairments. *Id.* at 678. In *Burch*, the plaintiff testified that she was 5'4" tall and weighed 215 pounds. The plaintiff's medical records also included notations of her obesity. *Id.* The court distinguished *Celaya* because the record did not indicate that the plaintiff's obesity exacerbated her other impairments (other than possibly her back pain) and the plaintiff was represented by counsel. *Id.* at 682. Thus, the *Burch* court found that the ALJ did not commit reversible error by failing to consider the plaintiff's obesity in the sequential analysis. *Id.* Unlike the plaintiff in *Celaya*, here, plaintiff was represented by counsel. There is no medical evidence indicating that plaintiff's obesity exacerbated her other impairments. Accordingly, the court finds *Celaya* to be distinguishable on the same grounds as set forth by the court in *Burch*.

The court finds that the ALJ did not commit reversible error in failing to consider plaintiff's obesity at Step 3 of the sequential evaluation process. Although plaintiff asserts that the ALJ erred in not considering her obesity at Step 3, plaintiff does not specify which listing she believes she meets or equals. *See Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.")). Presumably, plaintiff wishes to allege that she meets Listing 1.00 for disorders of the musculoskeletal system (#13, p. 9), and that her obesity combined with her degenerative disc disease to equal a listing. However, there is no evidence that plaintiff's obesity, alone or in combination, meets or equals a listing. At Step 3 of the sequential evaluation process, it is the claimant's burden to show that she has an impairment which meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. Here, plaintiff has offered no theory about how her obesity combined with her degenerative disc disease to equal a listed impairment. Plaintiff has also offered no medical evidence tending to show that her obesity

combined with any other impairment to equal a listed impairment. The court notes that the ALJ must not make assumptions about the functional effects of plaintiff's obesity. *See* SSR 02-01p.

The court finds that the ALJ's determination that plaintiff can do sedentary work adequately accounts for her medical conditions. This residual functional capacity ("RFC") finding is more restrictive than that suggested by Dr. Gasparre, an examining doctor, as it limits plaintiff to lifting only ten pounds and standing or walking just two hours in an eight-hour day. There is no evidence in the record that plaintiff cannot succeed within these limitations. Accordingly, the court concludes that the ALJ did not commit reversible error by failing to consider plaintiff's obesity in Step 3 of the sequential evaluation process.

**B. Plaintiff's Brain Atrophy**

Plaintiff alleges that the ALJ committed reversible error by finding plaintiff's brain atrophy to be a non-severe impairment, and by failing to supplement the record with a copy of plaintiff's MRI report (#13, p. 11). Plaintiff's allegations are based on a single paragraph in plaintiff's medical records, dated December 31, 2009, which states:

> Significant cerebellar and bifrontal temporal atrophy. Go ahead and check an [sic] magnetic resonance imaging. There is also a concerned finding on the computed axial tomography scan as empty sella turcica. This is a significant finding in a 47-year-old, no significant history of any alcohol abuse or family history of any early dementia. We will go ahead and order magnetic resonance imaging.

(AR 326). The court notes that these particular medical records were not submitted to the ALJ, but were given to the Appeals Council after the ALJ's November 3, 2010, written opinion. *Id.* at 4. However, at plaintiff's hearing, she testified that she had a CT scan of her brain and that "the doctor" noted significant cerebral and bi-frontal temporal atrophy. Plaintiff testified that the doctor informed her that this condition can cause "early symptoms of Alzheimer's or dementia." *Id.* at 44-45. In response, the ALJ asked plaintiff if she had any problems with her memory. Plaintiff replied, "No.

Usually, I have a very good memory. I've been forgetting a lot of things lately, but I think it's all because I'm worried about my heart and the way my body's acting right now." *Id.* at 45. Plaintiff also testified that she follows instructions very well. *Id.* at 46.

Plaintiff's December 31, 2009, medical records indicate that plaintiff had a CT scan of her brain, which revealed "fairly remarkable bifrontal and cerebellar atrophy." *Id.* at 324. In regards to this finding, Dr. David Brock stated, "We will go ahead and order magnetic resonance imaging." *Id.* at 326. Plaintiff's medical records do not indicate whether an MRI was actually scheduled. There is also no evidence that any medical doctor referred plaintiff to a specialist for a follow-up appointment. In short, other than a diagnosis of "bifrontal and cerebellar atrophy," there is nothing in plaintiff's medical records to inform the court about her brain atrophy condition. There is nothing to indicate that plaintiff received an MRI; that plaintiff is being treated for brain atrophy; or that plaintiff has any symptoms as a result of her brain atrophy. The ALJ correctly found that plaintiff's medical records do not suggest that she is in the early stages of Alzheimer's disease or document a medical doctor's opinion that plaintiff has any brain condition impacting her ability to work. *Id.* at 17. The ALJ also correctly noted that plaintiff testified that she has no memory problems or problems following instructions. *Id.* Accordingly, the court finds that the ALJ's conclusion that plaintiff's brain atrophy is a non-severe impairment is supported by substantial evidence in the record.

As for plaintiff's contention that the ALJ should have requested plaintiff's MRI report, as noted above, plaintiff did not submit her "miscellaneous" medical records (AR 305-327, Ex. 10F) until she filed an appeal with the Appeals Council.[5] Thus, the ALJ never received any medical records referencing plaintiff's brain atrophy, and plaintiff never informed the ALJ that she was

---

[5] The Appeals Council made the miscellaneous medical records part of the record on November 18, 2011 (AR 5).

scheduled to receive an MRI. Accordingly, the ALJ's failure to order an alleged MRI report of which she had no knowledge is certainly excusable.

In addition, it is plaintiff who bears the burden of proving disability and who has the responsibility to furnish medical records and any other evidence the ALJ may need in making conclusions about plaintiff's medical impairments. *See* C.F.R. §§ 404.1512(a), 416.912(a). An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001)). Here, plaintiff testified that although "the doctor" told her she may have a condition that could cause early symptoms of Alzheimer's disease or dementia, she has a very good memory and no problems following instructions (AR 45-46). Thus, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. It was clear that even if plaintiff had brain atrophy, the condition did not affect her ability to work.[6]

Finally, plaintiff asserts that the ALJ should have followed the "Special Technique" set forth in 20 C.F.R. § 404.1520a (#13, p. 12). "[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Keyser v. Comm'r Soc. Sec.*, 648 F.3d 721, 726 (9th Cir. 2011). "An ALJ's

---

[6] Plaintiff also contends that the ALJ should have ordered a consultative evaluation to assess plaintiff's brain atrophy (#13, pp. 11-12). The regulations that address this issue contain permissive language, and provide that an ALJ may arrange a consultative examination if the existing evidence is not sufficient to render a disability determination. *See* 20 C.F.R. § 404.1519(a) ("We *may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") (emphasis added). Although an additional medical examination may have shed more light on plaintiff's brain atrophy condition, plaintiff has not demonstrated that the evidence upon which the ALJ relied was insubstantial. The ALJ clearly considered plaintiff's own testimony that she has no memory problems or difficulty following instructions (AR 17). There is also no medical evidence that plaintiff suffers from any sort of mental impairment—such as early onset Alzheimer's disease. The evidence before the ALJ was sufficient to warrant the ALJ's finding that plaintiff's brain atrophy is a non-severe impairment.

failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a "colorable claim of mental impairment." *Id.* (citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000), *superseded by regulation as stated in Blackmon v. Astrue*, 719 F.Supp.2d 80, 92 (D.D.C. 2010)).

Here, plaintiff has not demonstrated a "colorable claim of mental impairment." *Keyser*, 648 F.3d at 726. Unlike the plaintiff in *Keyser*, plaintiff presented no evidence that she has any issues understanding or remembering instructions, maintaining concentration for extended periods of time, interacting appropriately with others, accepting instructions or criticism from supervisors, maintaining socially acceptable behavior, or responding to unexpected changes in the work place. *See id.* at 726-27. In fact, plaintiff's medical records indicate that she is an "alert cooperative woman," who is "very pleasant" and "well spoken" (AR 299, 320). Plaintiff also testified that she has a good memory and follows instructions well. *Id.* at 45-46. In short, there is nothing in the record to support plaintiff's assertion that she is mentally impaired, within the meaning of 20 C.F.R. § 404.1520a.

## V.   CONCLUSION

Based on the foregoing, the court concludes that the ALJ's decision was supported by substantial evidence in the record, and recommends that plaintiff's motion to remand (#13) be denied and defendant's cross-motion for summary judgment (#18) be granted. The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion to remand (#13) be **DENIED** and defendant's cross-motion for summary judgment (#18) be **GRANTED**.

**DATED:** February 20, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**